```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
 SALEH ALMAREH,                                                :
                                                               :
                                Plaintiff,                     :
                 -against-                                     :
                                                               :      20-CV-11024 (VEC)
 ALEJANDRO MAYORKAS, et al.,                                   :
                                                               :      OPINION & ORDER
                                Defendants.                    :
-------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/20/21

VALERIE CAPRONI, United States District Judge:

Plaintiff Saleh Almareh appeals the denial of his naturalization petition by U.S. Citizenship and Immigration Services ("USCIS"). USCIS denied Mr. Almareh's petition after determining that he did not meet the good moral character requirement of the Immigration and Nationality Act ("INA"). More specifically, USCIS determined that Mr. Almareh's failure to disclose a 2014 arrest, in addition to his failure to reveal certain tax delinquencies, disqualified him from citizenship. Mr. Almareh asserts that he is entitled to a *de novo* hearing in this Court under the INA and the Administrative Procedure Act ("APA"). In response, Defendants Alejandro Mayorkas, Tracy Renaud, and Timothy J. Houghton ("Defendants" or "the Government") have moved to dismiss Mr. Almareh's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, Defendants' motion to dismiss is GRANTED as to Plaintiff's claim under the APA and DENIED as to his claim under the INA.

## BACKGROUND

Mr. Almareh has been a lawful permanent resident since November 7, 1995, and lives in New York City.  Compl. ¶¶ 5, 9–10, Dkt. 1; Ex. 1, Dkt. 1.  On September 25, 2017, Mr. Almareh applied for naturalization.  Compl. ¶ 11.  On February 21, 2019, USCIS interviewed Mr. Almareh as part of the application process and questioned him about his arrest record; Mr. Almareh disclosed one arrest from 2011 for selling bootleg cigarettes but failed to disclose a second arrest in 2014 for supplying alcohol to a minor.  Compl. ¶ 11; Defs. Mem. at 1–2, Dkt. 21.  As a result, on August 23, 2019, USCIS denied Mr. Almareh's application on the ground that he failed to meet the INA's good moral character provision.  Defs. Mem. at 2–3.  That provision states: "No person shall be regarded as, or found to be, a person of good moral character who . . . has given false testimony for the purpose of obtaining any benefits under [the INA]."  8 U.S.C. § 1101(f)(6).  Mr. Almareh appealed that decision, stating that he "made an honest mistake with no intent to misrepresent" his history and that "language barriers" and "anxiety" were at the root of his errors.  Ex. A, Dkt. 21.  After a hearing on October 20, 2020 ("October Hearing"), USCIS affirmed its decision to deny Mr. Almareh's application based on the undisclosed arrest and Mr. Almareh's statement at the October Hearing that he had no overdue taxes, when, in fact, there were several outstanding tax warrants against Mr. Almareh.  *Id.*[1]

Pursuant to the INA, 8 U.S.C. § 1421(c), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.*, Mr. Almareh sought *de novo* review in this Court of the denial of his naturalization application.  Compl. ¶¶ 1–2.  Defendants moved to dismiss pursuant to Federal

---

[1]  Between his February interview and October Hearing, Mr. Almareh disclosed a March 16, 2019 arrest that was dismissed in May of 2019.  *See* Ex. 2, Dkt. 22.  There is no false testimony issue with respect to this arrest, as it occurred after the February 2019 interview and was disclosed at the October Hearing; the Government does not discuss the 2019 arrest in its briefing.

Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Not. of Mot., Dkt. 20; Defs. Mem. at 2. Defendants argue that Mr. Almareh is categorically ineligible for naturalization due to the INA moral character provision and that he cannot bring a claim under the APA because he has an available remedy in court. Defs. Mem. at 8–10.

## DISCUSSION

### I.      Legal Standard on a Rule 12(b) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quotation omitted). "An objection to standing is properly made on a Rule 12(b)(1) motion." *Tasini v. N.Y. Times Co.*, 184 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (citation omitted). A court considering a Rule 12(b)(1) motion may consider evidence outside of the pleadings to determine whether subject-matter jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) (cleaned up). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Mr. Almareh Abandoned His Claim under the Administrative Procedure Act by Failing Meaningfully to Oppose Defendants' Argument on this Point

Defendants contend that Plaintiff cannot seek relief under the APA because the APA provides for judicial review only of a "final agency action for which there is no other adequate remedy in a court," whereas an agency decision to deny naturalization under the INA is appealable to a district court. Defs. Mem. at 9–10 (citing 5 U.S.C. § 704). The Court need not reach the merits of whether Plaintiff has a remedy under the APA because Plaintiff failed to respond to this aspect of Defendants' motion to dismiss. *See generally* Pl. Opp., Dkt. 22. Failing to oppose a motion to dismiss a particular claim is deemed to be an abandonment of that claim. *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.") (citation omitted); *see also Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.") (citation omitted). The Court is within its discretion to consider the motion to dismiss Plaintiff's APA claim unopposed. Accordingly, Plaintiff's APA claim is dismissed.

## III. Mr. Almareh is Entitled to *de Novo* Review of His Naturalization Application under the INA

A person whose naturalization application is denied by USCIS "may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). Thus, Mr. Almareh may properly petition this Court for review of the denial

of his application. Regardless of whether he has or does not have a likelihood of success, Mr. Almareh is entitled to *de novo* review in this Court. Contrary to Defendants' argument, USCIS' finding that Mr. Almareh gave false testimony does not preclude the Court from reviewing his application as required by the statute. Defs. Mem. at 8–9. While it is true that a court may refrain from conducting an evidentiary hearing when there are no disputed questions of material fact, *see*, *e.g.*, *Del Orbe v. Holder*, No. 12-CV-1057, 2012 WL 3826182, at *2 (S.D.N.Y. Aug. 27, 2012) ("... because the review of naturalization proceedings is subject to the Federal Rules of Civil Procedure, a court need not conduct an evidentiary hearing where, as here, there are no disputed issues of material fact.") (citations omitted), whether Mr. Almareh in fact gave false testimony within the meaning of the INA is disputed.

For testimony that is factually inaccurate to rise to the level of "false testimony", the error must have been made with the "subjective intent of obtaining immigration or naturalization benefits." *Kungys v. United States*, 485 U.S. 759, 780 (1988). "Willful misrepresentations made for other reasons" are "not deemed sufficiently culpable to brand the applicant as someone who lacks good moral character." *Id.* (quotation omitted); *see also Maslenjak v. United States*, 137 S. Ct. 1918, 1927 (2017) (holding that the Government cannot revoke citizenship based on a then-applicant's lie during the naturalization process if the lie was made for reasons other than obtaining immigration benefits). Misrepresentations that are unintentional are, by definition, not willful, and misrepresentations made for other reasons, such as "embarrassment, fear, or a desire for privacy," are not considered to have been made with the subjective intent of obtaining immigration benefits. *Kungys*, 485 U.S. at 780 (quotation omitted).

Mr. Almareh argues that he did not give false testimony because he lacked the requisite subjective intent. Pl. Opp. at 7. The Government's showing of Mr. Almareh's subjective intent

is ultimately a credibility argument: Mr. Almareh informed USCIS that he "made an honest mistake with no intent to misrepresent" his arrest history and that "language barriers" and "anxiety" were at the root of his errors; USCIS rejected this explanation as not credible given Mr. Almareh's representation elsewhere in his application that he can "read and understand English." Ex. A.

Mr. Almareh disclosed one arrest to USCIS, which undermines the suggestion that he lied in a willful attempt to hide his criminal record in order to deceive the agency to obtain immigration benefits. Pl. Opp. at 7. On the other hand, it is unclear to the Court how Mr. Almareh, who speaks English, could have misunderstood the question if he understood it well enough to disclose one past arrest. On the issue of his overdue taxes, which was, apparently, raised only during the October Hearing, Mr. Almareh has asserted that he was unaware of the issue due to a mix-up with his accountant; this assertion may prove easier for Mr. Almareh to support as an inadvertent misstatement. Compl. ¶ 17.

USCIS' finding that Mr. Almareh gave false testimony appears to be based primarily on the fact of his since-corrected misrepresentations, and a determination that his explanation for the false statements is not believable. *See* Ex. A. This alone may not be enough to affirm USCIS' decision that Plaintiff lacks good moral character. *See, e.g., Lawson v. U.S. Citizenship & Immigr. Servs.*, 795 F. Supp. 2d 283, 296–97 (S.D.N.Y. 2011) (holding an applicant's misstatements about his drinking habits did not constitute false testimony because they were based on a misunderstanding of the questions and therefore not willful, and even if they were willful, they were not likely to have been made in order to obtain a naturalization benefit); *cf. Baidis v. Lynch*, 664 F. App'x 94, 97–98 (2d Cir. 2016) (holding "[t]he record amply support[ed]" an agency finding that an applicant had given false testimony because he "admitted

at the naturalization interview, he was 'trying to give answers to have that application approved'"). Regardless of where the Court eventually lands on Plaintiff's motive for providing inaccurate testimony, Mr. Almareh is entitled to *de novo* review of his naturalization application in this Court.[2]

## CONCLUSION

For the reasons discussed above, Mr. Almareh's APA claim fails, but he is entitled to *de novo* review of his naturalization application. As a result, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to close the open motion at Docket 20.

In light of the foregoing, an initial pre-trial conference is hereby scheduled for **Friday, December 3, 2021 at 11:30 a.m.** Pre-conference submissions are due no later than **Friday, November 26, 2021**. For a description of the pre-conference submissions requirements, the parties should consult the Court's order at Docket 16. The initial pretrial conference will be held telephonically. All parties and any interested members of the public must attend by dialing 1-888-363-4749, using the access code 3121171#, and the security code 1024#. All attendees are advised to mute their phones when not speaking and to self-identify each time they speak. Recording or rebroadcasting the proceeding is strictly prohibited by law.

**SO ORDERED.**

Date:  October 20, 2021             _____
       New York, New York                 **VALERIE CAPRONI**
                                       **United States District Judge**

---

[2]     Because Mr. Almareh is entitled to *de novo* review, the Court need not reach his claim that he timely recanted his misrepresentations. Pl. Opp. at 7. Nonetheless, it bears noting that, as the Government points out, USCIS only deems a recantation timely if the applicant corrects the misrepresentation before being exposed by officer or government official *and* only if the retraction is made during the same proceeding in which the misrepresentation was made. Defs. Reply at 3. Thus, this doctrine is likely unavailable in Mr. Almareh's case.